## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MAYRLAND

| | |
|---|---|
| DEREK SIMPKINS | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | *   Civil No.: PJM-07-CV-2657 |
| MONTGOMERY COUNTY | * |
| GOVERNMENT, et al. | * |
| | * |
| Defendants. | * |
| | * |

## MEMORANDUM IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants, Montgomery County Government, Sergeant Christopher Coulby, Lieutenant

Timothy Carroll, Daniel Keen, and Mark Mosier, by and through their undersigned attorneys and

pursuant to Fed. R. Civ. P. 56(c), hereby submit this Memorandum in Support of Defendants'

Motion for Summary Judgment.

## I.     STATEMENT OF THE CASE

Plaintiff alleges that on October 2, 2004, he was injured while an inmate at the Montgomery

County Department of Correction and Rehabilitation in Boyds, Maryland. Plaintiff claims that he

received bodily injuries as a result of an altercation involving him, another inmate, and some

correctional guards. Exactly three years later, on October 2, 2007, Plaintiff filed a Complaint

containing four counts: Count I alleged a violation of civil rights under 42 U.S.C. § 1983; Count II

was a claim for assault and battery; Count III alleged negligence and/or gross negligence; and

Count IV alleged negligent training and supervision. Plaintiff named Montgomery County

Government, County Executive Isiah Leggett, Montgomery County Department of Corrections and

Rehabilitation, Arthur Wallenstein, Sergeant Christopher Coulby, Lieutenant Timothy Carroll,

Officer Daniel Keen, and Officer Mark Mosier as Defendants. All individual Defendants were
sued in their official as well as their individual capacities. Those Defendants who had been served
filed a Motion to Dismiss Plaintiff's Complaint.

On March 14, 2008, Plaintiff filed a Motion to Amend Complaint along with a First
Amended Complaint. In his Motion, Plaintiff indicated that he was dismissing his claims against
Isiah Leggett, County Executive for Montgomery County; Arthur Wallenstein, Director of
Montgomery County Department of Correction and Rehabilitation; and the Montgomery County
Department of Correction and Rehabilitation.[1] Plaintiff's First Amended Complaint dropped the
counts for assault and battery, negligence, and negligent training and supervision. Additionally,
under Plaintiff's federal constitutional claim, he voluntarily withdrew the claims under the Fourth,
Fifth, and Fourteenth Amendments. Plaintiff is now proceeding under 42 U.S.C. § 1983 by way of
the Eighth Amendment.

Plaintiff's First Amended Complaint contains two counts: Count I is an Eighth Amendment
claim brought against Montgomery County and the four individual correctional officers under 42
U.S.C. § 1983; Count II is a state tort claim for gross negligence against the individual correctional
officers.[2]

_____

[1] Based on the representations in Plaintiff's Motion to Amend Complaint, Defendants understand that Plaintiff
intended to dismiss his claims against the County Executive for Montgomery County, Isiah Leggett; the Montgomery
County Department of Correction and Rehabilitation (MCDCR); and the MCDCR director, Arthur Wallenstein.
Defendants assume that the references which remain in the caption of the First Amended Complaint as to Leggett, and
in paragraph 4 of the First Amended Complaint as to Leggett and Wallenstein were simply an oversight by Plaintiff.
To the extent that any allegations remain as to Leggett and/ or Wallenstein, said Defendants seek dismissal of this
lawsuit based upon the arguments previously set forth in their original Motion to Dismiss as well as the grounds set
forth herein.

[2] Montgomery County was also named in Count II, but Montgomery County filed a Motion to Dismiss the claim
against it for gross negligence and punitive damages, which was granted on August 8, 2008.

2

## II.    STATEMENT OF FACTS

1.  This incident occurred at the nationally accredited Montgomery County Correctional Facility
    (MCCF), one of 93 jails out of 3800 in the country with national accreditation. (Ex. 1,
    Montgomery County Answers to Plaintiff's Interrogatories no. 12).

2.  MCCF has 100 percent accreditation from the American Correctional Association, the
    Maryland Commission on Correctional Standards, the National Commission on Correctional
    Health Care, and the Correctional Educational Association. (Ex. 1, Ans. no. 12).

3.  Plaintiff was involved in a physical fight with inmate Hawthorne in the common area during
    recreational time. (Ex. 1, Ans. no. 3).

4.  Inmate Hawthorne began the fight by punching Plaintiff in the mouth as the result of a dispute
    over the football pool. (Ex. 2, Plaintiff's Answers to Mosier's Interrogatories no. 2).

5.  Approximately 64 inmates were out of their cells in the common area for recreation when the
    fight broke out between Plaintiff and Hawthorne.[3]  (Ex. 1, Ans. no. 3).

6.  The inmates who were out of their cells instantly formed a crowd around the two fighting
    inmates and continued to close in; all of the inmates were yelling and boisterous. The situation
    was escalating. (Ex. 3, Keen Answers to Plaintiff's Interrogatories no. 7).

7.  This was an emergency situation, prompting a "10-51" call for the emergency response team.
    (Ex. 1, Ans. no. 3).

8.  Plaintiff testified that he grabbed Hawthorne by his jumpsuit and took him to the ground. (Ex.
    2, Ans. no. 2).

9.  The fighting inmates fell into the glass wall and then to the floor. (Ex.1, Ans. no. 3).

---

[3] Plaintiff estimated that 50-60 inmates were out of their cells for recreational time in the common area at the time of
the incident (Ex. 2, Ans. no. 2). Whether the number of inmates was 50 or 64 is immaterial.

10. When the emergency response team arrived, they instructed the inmates to "let go," "stop fighting," "calm down," "place your hands behind your back," and that "the fight is over." (Ex.1, Ans. no. 3).

11. Plaintiff admits he remained on top of Hawthorne, straddling him and holding him down so Hawthorne could not get up. (Ex. 2, Ans. no. 2).

12. Plaintiff shouted obscenities and refused to separate himself from inmate Hawthorne. (Ex.1, Ans. 3).

13. Because Plaintiff and Hawthorne would not stop fighting, the officers went "hands on" to separate the inmates and restore discipline. (Ex.1, Ans. no. 3).

14. The officers used only that degree of force which was necessary to separate the fighting inmates and apprehend them. (Ex. 1, Ans. no. 3).

15. Defendant Mosier knocked Plaintiff off of Hawthorne, and held him down by putting pressure on Plaintiff's neck. (Ex. 2, Ans. no. 2).

16. Plaintiff claims that at this point he lost consciousness for "a few seconds." (Ex. 2, Ans. no. 2).

17. Plaintiff claims that Defendant Keen twisted his leg in the struggle, and broke it. [4] (Ex. 2, Ans. no. 2).

18. Plaintiff was then handcuffed and lifted to his feet to be walked to the medical unit by Defendants Keen and Coulby. (Ex. 2, Ans. no. 2).

19. Defendant Carroll was the shift commander on the day of the incident, but did not personally participate in or witness the incident. (Ex. 4, Ans. No. 7)

---

[4] Plaintiff told Defendant Carroll that he hurt his leg when he and Hawthorne fell to the floor while they were fighting. (Ex. 4, Carroll's Answers to Interrogatories no. 7). For purposes of this motion, however, Defendants have used Plaintiff's version.

4

20. Warden Robert Green witnessed this incident and testified that all responding officers were in complete compliance with MCCF policies and procedures. (Ex. 1, Ans. no. 12).

21. The procedures used by the responding officers were in compliance with MCCF training and with MCCF accreditations. (Ex. 1, Ans. no. 12).

22. According to Plaintiff, Defendants Coulby and Keen walked Plaintiff 100 yards to the medical unit on his injured leg. (Ex. 2, Ans. no. 2).

23. When Plaintiff arrived at the medical unit, he was examined and treated by the nurse on duty. (Ex.1, Ans. no. 9; Ex. 2, Ans. no. 2, Ex. 5, Inmate Medical Record).

24. The day after the incident, on October 3, 2004, Plaintiff saw the doctor who ordered an x-ray for his knee and prescribed more medication. [5] (Ex. 6, Physicians Orders).

25. Plaintiff's physical condition was checked again on October 4, 2004. (Ex. 5).

26. On October 5, 2004, both an x-ray and an ultrasound were performed on Plaintiff's leg. (Ex. 6).

27. On October 6, 2004, Plaintiff saw the doctor on staff at 9:00 a.m., who referred Plaintiff to an orthopedist and prescribed a cane for support of the leg (Ex. 6).

28. On October 7, 2004, Plaintiff was scheduled for surgery (Ex. 6).

## III.   STANDARD OF REVIEW

Summary judgment should be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and

---

[5] Plaintiff asserts he was placed in segregation and had no medical attention for 6 days, but the attached records marked as Exhibits 4 and 5 prove otherwise.

5

that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c.) "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed. 202 (1986.) The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. *Id.* at 248, 252, 106 S. Ct. at 2510, 2512. Moreover, wholly speculative assertions will not suffice. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985.) "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (quoting Fed. R. Civ. P. 1.) In accordance with this standard, Defendants are entitled to summary judgment as a matter of law.

## IV.   ARGUMENT

### A.   Plaintiff's Claims of Excessive Force Under the Eighth Amendment Fail Because Plaintiff Has Not Established Any Evidence That the Defendants' Conduct was Malicious and Sadistic.

As a convicted prisoner, Plaintiff's claims of excessive force are controlled by the standards of the Eighth Amendment. *See Graham v. Connor*, 490 U.S. 386, 398-99, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989) (citing *Whitley v. Albers*, 475 U.S. 312, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986) (convicted prisoners are protected from the use of excessive force against them by the cruel and unusual punishment clause of the Eighth Amendment to the U.S. Constitution). To prove a claim that his constitutional rights were violated through the use of force, an inmate must satisfy two requirements of the Eighth Amendment. *See Stanley v. Hejirika,* 134 F.3d 629, 634 (4th Cir.

6

1998), *Marshall v. Odom* 156 F. Supp. 2d 525, 529 (D. Md. 2001) (quoting *Stanley* and applying the two-part test). First, the prisoner must satisfy a subjective requirement that the force used by the officer "inflicted unnecessary and wanton pain and suffering." *Hejirika,* 134 F.3d at 634, quoting *Hudson v. McMillian,* 503 U.S. 1, 6, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992). Secondly, the prisoner must show that the correctional officers' actions were 'objectively harmful enough' to offend contemporary standards of decency.

The first part of the inquiry involves resolving the "core judicial inquiry" of "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically to cause harm." *Hudson,* 503 U.S. at 7 (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986)). The wantonness of an officer's conduct is adjudged in light of a prison official's state of mind. *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S. Ct 2321, 115 L. Ed. 2d 271 (1991).

"In making and carrying out decisions involving the use of force to restore order in the face of a prison disturbance, prison officials undoubtedly must take into account the very real threats the unrest presents to inmates and prison officials alike, in addition to the possible harm to inmates against whom force might be used." *Whitley*, 475 U.S. at 320. The Supreme Court recognized that decisions made during a prison disturbance are "necessarily made in haste, under pressure, and frequently without the luxury of a second chance." *Id.* In *Whitley*, an innocent inmate was shot as officers attempted to quell a prison disturbance in which an officer had been taken hostage. The Court found that there was no violation of the innocent inmate's Eighth Amendment rights.

In assessing the subjective component of an Eighth Amendment claim, the inquiry centers on whether the prison official acted with a sufficiently culpable state of mind. *Williams, supra,* 77 F.3d at 761. Specifically, a plaintiff must prove that the officer applied force "maliciously and

7

sadistically for the very purpose of causing harm." *Whitley,* 475 U.S. at 320-21. This is a heavy burden to satisfy the subjective component of the claim. *Whitley,* 475 U. S. at 320. Courts generally look to five factors considered useful in determining a defendant's subjective intent: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted; (4) the extent of the threat to the safety to staff and inmates as reasonably perceived by the prison officials; and (5) any efforts made to temper the severity of a forceful response. *Marshall v. Odom,* 156 F. Supp. 2d 525, 530 (D. Md. 2001).

When these factors are applied to the facts of the case at bar, it is clear that Plaintiff's fight with Hawthorne jeopardized the safety and security not only of the two fighting inmates, but also of the crowd of 50-64 inmates which had formed around them and the responding prison staff. Thus, the conduct of the officers must be viewed in the context of the emergency situation in which it occurred, and not with the hindsight of a Monday morning quarterback. A prison disturbance was in progress and escalating. Immediate action was required to prevent escalation into a group brawl.

It is within this context that the Court should view Plaintiff's testimony that Defendant Mosier knocked him off of Hawthorne, and that Defendant Keen broke Plaintiff's leg in the struggle. There is absolutely no evidence that the actions taken by Defendant Mosier or Defendant Keen were done "maliciously and sadistically for the very purpose of causing harm." To the contrary, the actions of those officers were expressly to restore discipline in a volatile and disintegrating situation. Between 50 and 64 inmates were gathered around the fight, yelling and becoming boisterous. The inmates greatly outnumbered the prison staff. A more significant prison fight or even a riot could have occurred if the officers did not respond immediately with sufficient force to break up the fight. The officers used only the force that was necessary to end the fight and restore discipline. Defendant Mosier pushed Plaintiff off of Hawthorne to separate the fighting

inmates. Defendant Keen grabbed Plaintiff's leg while trying to control him for handcuffing.

There is no evidence that this conduct was done "maliciously and sadistically for the very purpose of causing harm." Rather, Defendants Mosier and Keen did what was required in order to restore order. On these facts, Plaintiff cannot establish the requisite state of mind needed to support the first prong of the two-part test (subjective component) of his Eighth Amendment claim. *Hudson v. McMillian*, 503 U.S. 1, 6 (1992); *Whitley v. Albers*, 475 U.S. 312, 320 (1986) (explaining that malicious and sadistic conduct constitutes the "unnecessary and wanton infliction of pain" prohibited by the Eighth Amendment.).

Moreover, in *Stanley v. Hejirika*, 134 F.3d 629, 635-36 (4th Cir. 1998), the court reversed a judgment that prison officers acted sadistically and maliciously where, in the context of a prison disturbance, they applied force on a prisoner's neck, took him to the ground, possibly stomped on him, pulled on his legs, and generally treated him roughly. Even evidence that prison officials erred in judgment or acted wholly unreasonably does not prove that the force was applied maliciously or sadistically. *See Whitley*, 475 U.S. at 323-25 (holding that the shooting of a prisoner during a disturbance, even if unnecessary and done unreasonably in light of a lack of imminent danger, did not constitute malicious or sadistic conduct, as it was 'part and parcel' of a good faith effort to restore discipline).

## B. Plaintiff's Claims of Excessive Force Under the Eighth Amendment Fail Because Plaintiff Has Not Established Any Evidence That the Defendants' Conduct Offended Contemporary Standards of Decency.

In order to prevail under the Eighth Amendment, "the inmate must also satisfy an objective requirement; he must show that the correctional officer's actions, taken contextually, were 'objectively harmful enough' to offend contemporary standards of decency.' " *Stanley*, 134 F.3d at 634. *See also, Williams v. Benjamin,* 77 F.3d 756, 761 (4th Cir. 1996); *Oliver v. Powell*, 250 F.

9

Supp. 2d 593, 604 (E.D. Va. 2002). The objective standard focuses on the character of the allegedly offensive conduct as well as the severity of the injuries suffered by the inmate. The objective component of a case alleging excessive force by a prison official requires that the plaintiff show more than a *de minimus* injury. *Williams*, 77 F.3d at 761 (citation omitted). "Not every malevolent touch by a prison guard gives rise to a federal cause of action." Although a broken leg is more than a *de minimus* injury, it is not actionable under the Eighth Amendment unless the mechanism of injury also offends contemporary standards of decency.

In *Walters v. County of Charleston*, 63 Fed. Appx. 116; 2003 U.S. App. LEXIS 7629 (4th Cir. 2003), the inmate was housed in a temporary detention facility due to his failure to pay back child support. The inmate became violent, putting himself and others at substantial risk of injury. During their attempts to subdue the inmate, the officers caused a compression injury to his neck and inhibited his ability to breathe, thereby causing his death. The Fourth Circuit found that despite the tragic outcome, given the totality of the circumstances, the conduct of the officers was objectively reasonable to protect themselves and others from the Plaintiff. The officers used only their bodies and open hands, and their actions were taken in good faith to restore discipline. The appellate court, therefore, affirmed the motion for judgment in favor of the officers which had been granted as a matter of law.

In the instant case, Plaintiff was involved in a physical brawl with a fellow inmate during open recreation time as a result of a dispute over the football pool. Between 50 and 64 inmates were surrounding them, closing in, yelling and boisterous. The correctional officers used verbal commands to stop fighting, which were ignored. The officers perceived the potential for the situation to become out of control and went "hands on" to control the fighting inmates and restore discipline. No weapons or protective instruments were used. At some point during the incident,

10

Plaintiff wound up with a broken leg. Though his injury was unfortunate, the circumstances under which it occurred, like those in *Walters*, were for the protection of the inmates and prison officials. The "hands on" separation of the fighting inmates was necessary, and in no way rises to the objective standard of offending contemporary standards of decency. Thus, Plaintiff cannot establish either the subjective or objective components, let alone both.

The following establishes that each individual Defendant is entitled to summary judgment in this action:

### 1.     **Lieutenant Timothy Carroll**

Plaintiff's discovery responses contain no factual evidence of any wrongdoing by Lt. Carroll, who had no physical contact with Plaintiff and did not witness the incident. There is no evidence of malice or sadistic conduct on the part of Lt. Carroll, nor is there any evidence that he did anything to offend contemporary standards of decency. Therefore, Defendant Carroll is entitled to summary judgment with respect to Plaintiff's Eighth Amendment claim as he used no force whatsoever against Plaintiff.

### 2.     **Sergeant Christopher Coulby**

Plaintiff asserts that Sergeant Coulby helped pick him up off the ground after the fight was stopped. There is no evidence that Sergeant Coulby went hands on during the fight. There is no evidence that Sgt. Coulby used any more force than was necessary to help lift Plaintiff to his feet. There is no evidence of malice or sadistic conduct on the part of Sergeant Coulby nor is there any evidence that he did anything to offend contemporary standards of decency. Hence, Sergeant Coulby is entitled to summary judgment with regard to Plaintiff's Eighth Amendment claim of excessive force.

### 3.     **Defendant Daniel Keen**

11

Defendant Keen, along with Defendant Mosier, went hands on to physically separate the two fighting inmates and restore discipline while surrounded by a crowd of 50-64 boisterous inmates. During this struggle, Plaintiff claims that Defendant Keen pulled and twisted Plaintiff's leg. After Plaintiff was apprehended and in handcuffs, Defendant Keen, along with Sergeant Coulby, helped pick Plaintiff up off the ground. Defendant Keen used no more force than was necessary to end the fight, restrain and handcuff Plaintiff, and lift Plaintiff to his feet. Defendant Keen, just like the prison officials in *Whitley*, *Stanley* and *Walters,* was acting in a good faith effort to restore discipline. Defendant Keen's conduct is nearly identical to that of the prison officials in *Stanley*, who, in the process of restraining a prisoner, pulled on his legs. The *Stanley* court found this conduct to be constitutional in the context of a prison disturbance. 134 F.3d at 635-36. Therefore, Defendant Keen, acting in a good faith effort to restore discipline and without malice, did not violate Plaintiff's Eighth Amendment rights. As such, he is entitled to summary judgment with respect to Plaintiff's Eighth Amendment claim alleging excessive force.

### 4.    iv. **Defendant Mark Mosier**

According to Plaintiff, Defendant Mosier tried to physically separate the two fighting inmates by pushing Plaintiff off of Hawthorne. In order to restrain Plaintiff, Defendant Mosier took Plaintiff to the ground and put pressure on the back of his neck while he was on the ground. Mosier's contact with Plaintiff was made in an effort to separate the inmates, control the situation, and restore discipline. Defendant Mosier, just like the prison officials in *Whitley*, *Stanley* and *Walters*, was acting in a good faith effort to restore discipline, and therefore did not violate Plaintiff's Eighth Amendment rights. Mosier, like the prison officials in *Stanley*, took the prisoner to the ground to stop a disturbance and applied pressure to his neck to restrain him. Consequently, because Defendant Mosier acted in a good faith effort to restore discipline, he is entitled to

12

summary judgment with respect to Plaintiff's Eighth Amendment claim alleging excessive force.

**C.     Plaintiff Has Failed to Establish A *Monell* Claim Against Montgomery
        County for the Alleged Excessive Use ff Force.**

A local government cannot be sued under 42 U.S.C. § 1983 for an injury inflicted solely by
its employees or agents. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 693 (1978). In order for a
local government to be held liable for an injury inflicted by its employees or agents, a plaintiff must
prove that it was *the execution of a government's policy or custom* that resulted in the injury to the
Plaintiff. Prison administrators are accorded wide-ranging deference in the adoption and execution
of policies and practices that in their judgment are needed to preserve internal order and discipline.
*Bell v. Wolfish*, 441 U.S. 520, 547 (1979).

There is absolutely no evidence that Montgomery County maintains any policy or custom
that encourages, instructs, or condones inflicting unnecessary injuries on inmates. In sharp
contrast, MCCF is one of 93 jails out of 3800 nationwide that has earned national accreditation.
MCCF has 100 percent accreditation from the American Correctional Association, the Maryland
Commission on Correctional Standards, the National Commission on Correctional Health Care, and
the Correctional Educational Association. Pursuant to *Monell*, Plaintiff must show that the
execution of a Montgomery County policy, custom, or procedure was the cause of his injuries.
*Monell*, 436 U.S. at 693. Plaintiff's failure to identify any such policy, custom, or procedure
directing or ratifying the unwarranted use of force is fatal to his complaint against Montgomery
County. Unlike *Monell*, where the case unquestionably involved an official policy, here, Plaintiff
presents no evidence that any official policy or custom of Montgomery County played any role in
causing his injuries. Hence, Montgomery County is entitled to summary judgment with respect to
Plaintiff's Eighth Amendment claim.

**D.     The Defendant Officers Did Not Violate Plaintiff's Eighth Amendment**

13

**Rights Because They Were Not Deliberately Indifferent to Plaintiff's Medical Needs, as They Were Unaware that His Leg was Fractured and They Brought Him Directly to the Medical Unit After the Fight.**

A failure to provide a prisoner medical care only constitutes cruel and usual punishment prohibited by the Eighth Amendment where the prison staff is deliberately indifferent to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (explaining that deliberate indifference to serious medical needs constitutes the "unnecessary and wanton infliction of pain" prohibited by the Eighth Amendment). In order to prove deliberate indifference, a plaintiff must show that the prison staff knew about the extent of Plaintiff's injuries and acted with reckless disregard to a serious harm when providing medical treatment. Negligent treatment or diagnosis falls short of a constitutional claim. *Randolph v. Maryland*, 74 F. Supp. 2d 537, 543 (D. Md. 1999) (citing *Estelle*, 429 U.S. at 106).

Deliberate indifference can be shown through complete denial of medical care or by prison guards intentional interference with medical care, *Estelle*, 429 U.S. at 104; however, where medical care is provided, a disagreement about the type of medical care provided does not give rise to an Eighth Amendment claim. *Estelle*, 429 U.S. at 104 (holding that 17 days of affirmative medical care precludes a claim of denial of medical care); *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003) (holding that a prisoner's contention that he needed to be seen by a doctor more than 10 times in 3 months did not give rise to a constitutional claim); *Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968) (affirming dismissal of Eighth Amendment claim where plaintiff alleged disagreement between himself and doctor over what type of medication he needed).

Applying this law to the facts *sub judice*, there is no evidence of "deliberate indifference" as to any of the Defendants. Indeed, Defendants helped him stand up after the fight was over and he was apprehended. Then Defendants assisted him on the walk to the medical unit. There is no

14

evidence that Defendants knew Plaintiff's leg was broken, only that he claimed his leg hurt. Defendants facilitated his walk to the medical unit where he could be properly evaluated and treated by medical experts. It was reasonable for the individual Defendants to rely upon the expertise of the medical professionals who examined and evaluated the Plaintiff.

With respect to the individual defendants, each is entitled to judgment for the reasons set forth below:

**1.     Mark Mosier and Lieutenant Carroll**

Plaintiff has produced no facts regarding deliberate medical indifference on the part of Defendants Mosier and Carroll. As such, they are entitled to summary judgment on the alleged deliberate indifference claim.

**2.     Sergeant Christopher Coulby and Daniel Keen**

After the fight was over, Sergeant Christopher Coulby and Defendant Daniel Keen brought Plaintiff directly to the medical unit to receive medical attention for any injuries that he might have sustained. Defendants Coulby and Keen assisted Plaintiff in walking to the medical unit. There is simply no evidence to show that either of them had knowledge that Plaintiff's leg was fractured. They brought Plaintiff to the medical unit where he could be examined and treated by medical professionals. Defendants were entitled to rely on the expertise of the medical professionals in properly caring for Plaintiff. Although Plaintiff disagrees with the manner in which he was brought to the medical unit, he was taken immediately for medical care. Just like the plaintiff's disagreement about medical care in *Ciarpaglini* and *Coppinger*, the facts herein fail to support an Eighth Amendment claim. Therefore, Sergeant Timothy Coulby and Defendant Daniel Keen are entitled to summary judgment with regard to Plaintiff's Eighth Amendment claim against them for alleged deliberate indifference to Plaintiff's medical needs.

15

**E.     There is no Evidence that Montgomery County Had a Policy, Custom or Procedure Encouraging Deliberate Indifference to the Medical Needs of the Inmates.**

Montgomery County was not deliberately indifferent to Plaintiff's medical needs. Plaintiff must show a policy, practice or custom of ignoring the medical needs of the inmates. He has not done so. As soon as Plaintiff arrived at the medical unit, he was evaluated by the nurse on staff and given painkillers. Even if it could be proved that the nurse was negligent in not diagnosing his fractured leg in his first visit, this still would not give rise to an Eighth Amendment claim, just like the potentially negligent medical treatment in *Randolph*, 74 F. Supp. 2d at 543 did give rise to such a claim. In the instant case, Plaintiff disagreed with the nurse and thought he should be given stronger painkillers exactly like the plaintiff in *Ciarpaglini,* 352 F.3d at 331, but, like that inmate, Plaintiff does not have a valid Eighth Amendment claim based on his desire for stronger medication.

Plaintiff may be dissatisfied with the nature and extent of care he received, but he did receive medical care. The day of the incident he was examined and evaluated by the nurse. The day after the incident, on October 3, 2004, Plaintiff saw a doctor who ordered an x-ray for his knee and prescribed more medication. On October 4, 2004, he was examined again. On October 5, 2004, both an x-ray and an ultrasound were performed on Plaintiffs leg. On October 6, 2004, Plaintiff saw the doctor on staff at 9:00am, who referred Plaintiff to an orthopedist and prescribed a cane for support of the leg. On October 7, 2004, Plaintiff was scheduled for surgery. This medical treatment, like the 17 days of affirmative medical treatment provided to the prisoner in *Estelle,* 429 U.S. at 104, precludes an Eighth Amendment claim for denial of medical care or for deliberate indifference. Consequently, Defendant Montgomery County is entitled to summary judgment with regard to Plaintiff's Eighth Amendment claim for alleged denial of medical care or deliberate

16

indifference to Plaintiff's medical needs.

**F.     Plaintiff's Allegations of Gross Negligence Fail Because Plaintiff Has Not Demonstrated That Defendants Showed Reckless and Wanton Disregard for Plaintiff's Rights.**

In Maryland, gross negligence is defined as "wanton or reckless disregard for human life or for the rights of others." *Tatum v. Gigliotti*, 565 A.2d 354, 358 (Md. App. 1989) (explaining that a wrongdoer is guilty of gross negligence or acting willfully or wantonly if they inflict injury intentionally or are "so utterly indifferent to the rights of others" that they act as if such rights did not exist). These elements of "reckless disregard for the rights of others" and/or "willful or wanton infliction of pain" are almost identical to the language of the Eighth Amendment standards discussed previously. See, *Whitley v. Albers*, 475 U.S. 312, 320 (1986) (the Eighth Amendment standard for claims based on the excessive use of force is characterized as the "unnecessary and wanton infliction of pain.") and *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976)( deliberate indifference to medical needs is actionable because it results in the "unnecessary and wanton infliction of pain.") Hence, the elements which must exist to establish gross negligence can be treated as equivalent to those elements which must be proven to establish a violation of the Eighth Amendment. Plaintiff has failed to meet that significant hurdle, for the reasons set forth previously. As such; all individual defendants are entitled to summary judgment on the claims of gross negligence for the same reasons that they are entitled to summary judgment on the Eighth Amendment claims.

**V.     CONCLUSION**

For the foregoing reasons, Defendants Carroll, Coulby, Keen, Mosier and Montgomery County are entitled to summary judgment on all counts. Defendants request this Court enter judgment as a matter of law in their favor and grant such further relief as this Court deems proper.

17

Respectfully submitted,

LEON RODRIGUEZ
COUNTY ATTORNEY

_____/s/_____

Patricia P. Via, , Chief
Division of Litigation – Self-Insurance
Bar No. 04829 (signed by Patricia Kane with
permission of Patricia P. Via)

_____/s/_____

Patricia Lisehora Kane
Associate County Attorney
Bar No. 13621

Attorneys for Defendants Montgomery
County, Maryland, Sgt. Coulby, Lt. Carroll,
Mark Mosier, and Daniel Keen
101 Monroe Street, Third Floor
Rockville, MD 20850
(240) 777-6700
Fax: (240) 777-6705
patricia.kane@montgomerycountymd.gov

Filed: September 28, 2009

PLK:pas:L07-00499
memo support msj
M:\Cycom\Wpdocs\D013\P004\00096293.DOC