**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

DEREK SIMPKINS

     PLAINTIFF,

v.                                     07-2657 (PJM)

MONTGOMERY COUNTY GOVMT. et al

     DEFENDANTS.

_____

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT**

**NOW COMES** Plaintiff, Derek Simpkins, by undersigned counsel, and Opposes

Defendants' Motion for Summary Judgment as follows:

## I.      STATEMENT OF FACTS

1.     Plaintiff, while incarcerated at the MCDCR on October 2, 2004 was physically assaulted

when without provocation, he was punched in the face by another incarcerated individual inmate

named "Hawthorne. (See Plaintiff's Declaration at 1).

2.     Plaintiff did not throw any punches during the confrontation but, instead, attempted to

utilize as little force as possible to diffuse the situation.  Plaintiff wrapped Mr. Hawthorn around

his waist taking him to the floor and sitting astride him.  He thereby  restrained Mr. Hawthorne

in a "clinch" in order to avoid further attack.  Id. at 2-3.

3.     Defendants Mosier, Keen, and Colby responded to the disturbance in addition to Officers

Lee and Silcox who made the distress call and issued the official incident report. Id. at 4.

4.     Defendants Mosier, Keen, and Colby were employees of the MCDCR and/or

Montgomery County, and some or all of the individuals identified in paragraph 10 and above

were members of the MCDCR Emergency Response Team. (See Plaintiff's Amended Complaint at 5).

5.      Officer Mosier grabbed Plaintiff from behind simultaneously applying pressure to both his back and neck. Id.

6.      Officer Keen struck Plaintiff's knee with a blow causing Plaintiff's leg to break. Id.

7.      Plaintiff was caused to momentarily lose consciousness. Id.

8.      At no time did any of the officers demand that Plaintiff stop, drop to his knees, or otherwise direct Plaintiff to cease his holding  Hawthorne prior to their initiating physical attacks upon Plaintiff. Id.

9.      When Plaintiff's consciousness returned his knee was severely injured causing him excruciating pain. Id.

10.     Plaintiff informed Officers Carroll, Keen, Colby and anyone within is reasonably hearing, that his leg was definitely broken. Id.

11.     Officers Keen and Colby, without the aid or review of medical personnel or the use of a stretcher or other means to reduce pressure on Plaintiff's severely injured knee, directed Plaintiff to walk on his broken leg approximately 100 yards to the medical department with his hands restrained behind his back.  This walk included at least one ramp or incline. Id.

12.      Plaintiff was in excruciating pain at all times during this walk and he both informed anyone within reasonable hearing that he was both in pain and that he requested assistance multiple times. Id.

13.     Officers Keen and Colby merely laughed at Plaintiff  and told him to "suck it up." Id. at 6.

14.     Officers Keen and Colby caused Plaintiff's bicep to become ruptured by walking him in

this manner as set forth above allowing him to fall several times during the walk en-route to the medical department. Id.

15.     At medical,  Plaintiff was minimally reviewed by "Frank" was the nurse on duty.  Frank dispensed Plaintiff the medication  I-Prin for his pain, an insufficient pain reliever for the extent of the injury suffered by Plaintiff. Id.

16.     Instead of providing Plaintiff with a wheel chair or other aid, the officers again directed him to walk from the medical department to a unit where he was placed in an administratively segregated cell in which he  remained  from October 2nd 2004 through October 5, 2004 without further medical treatment for the injuries he sustained on October 2, 2004. Id.

17.     Plaintiff made pleas for  medical assistance from October the 2nd through October the 5th whenever staff came anywhere near his segregated cell. Id.

18.     Plaintiff caused to have drafted several administrative Grievance Forms during this period of time  while was confined in segregation without treatment. Id.

19.     Defendants first provided Plaintiff with essential medical treatment when he was seen by Dr. Knolmayer, on or about October 6, 2004. Id.

20.     Plaintiff suffered a fracture of his lateral tibial plateau. Id.

**The Applicable Standard for Summary Judgment:**

Under Fed. R. Civ. P. 56( c ), summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Edelman v. Lynchburg College*, 300 F.3d 400, 404 (4th  Cir. 2002).  To be material, the fact must be capable of affecting the outcome of the litigation; to be genuine, the

issue must be supported by admissible evidence sufficient for a reasonable trier of fact to find in favor of the moving party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  A "genuine issue" is one whose resolution could establish an element of a claim or defense, therefore, affect the outcome of the action. *Celotex,* 477 U.S. at 322; *Anderson,* 477 U.S. at 248.  In considering a motion for summary judgment, the "evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 248.  To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "failed to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477  U.S. at 322.

## II.     LEGAL ARGUMENT

**A.     Plaintiff Can Establish Defendants' Conduct was Malicious and Sadistic in Violation of His Eight Amendment Protections**

Defendants' conduct meets the legal standard for a violation of Plaintiff's Eighth Amendment Protections afforded him in accordance with the U.S. Constitution.  On October 2, 2005, and without provocation, Plaintiff was physically assaulted by Andre Hawthorne at the Montgomery County Detention Facility. Plaintiff's Declaration at 1-3. The altercation ensued as both men wrestled on the floor until they were separated.  Id. In an effort to defend himself, Plaintiff sat on Hawthorne without exchanging punches.  Id. The incident was quickly diffused as members of Defendants' response tem appeared to quell the incident in a matter of seconds. Id.

Contrary to Defendants' self-assertions, there is no evidence in the record that the physical altercation between Plaintiff and Hawthorne escalated into a <u>prison disturbance</u>, or that Plaintiff presented a threat to the officers, was disrespectful or uncooperative to their

commands[1]. (Emphasis added).  See Defendants' Motion at 7.  Defendants' effort to revise the facts to place it in a better light before this Court is ineffectual. Defendants cannot rely upon the argument that the force used was justified in order to quell a prison disturbance. Id.  ("In the context of a prison disturbance, this question "ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.' " *Id.* (quoting *Whitley, 475 U.S. at 320-21, 106 S.Ct. at 1085).*

In order for this Court to correctly consider Defendants' dispositive motion, it is imperative to examine the complete record and not Defendants' bald assertions. To that end, and as a result of Plaintiff's grievance, Defendant Facility conducted an internal investigation.  See "Investigative Report," Exh.2.

"Excessive force is evaluated by a two-prong test. First, the plaintiff must show that the "alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Norman*,  25 F.3d at 1262 (quoting *McMillan*, 503 U.S. at 1). Subjectively, the plaintiff must show that the prison official "maliciously and sadistically used force to cause harm."  *McMillian*, 503 U.S. at 9; *Williams v. Benjamin*, 77 E3d 756, 761 (4th Cir. 1996).

Plaintiff contends that during the events giving rise to this litigation, he was entitled to protection from the Defendants' use of excessive force by the cruel and unusual punishment clause of the Eight Amendment of the U.S.  (See *Graham v. Connoer,* 490 U.S. 386, 398-99, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989) (citing *Whitley v.Albers*, 475 U.S. 312, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986).  Moreover, Defendants' conduct meets both the objectively harmful enough standard and the subjective, or, maliciously and sadistically used force against him that

---

1 For instance, the Investigative Report unequivocally contradicts any reference that a so called "prison disturbance" was imminent. Instead, the investigator interviewed Private David Silcox who stated "as he started towards the steps, he called Code 10-51 Code (1) one. While going down the stairs, Pvt. Silcox said he was giving the inmates in the Pod, orders to stand in front of their cells and wait to be let into their cells to be locked in. (Inmates moved to their cell doors.)" In other words, the inmates complied with the specific instruction to return to their cells. (See Report at 5).

resulted in harm.

Plaintiff injury was not demines, but, instead resulted in a severe injury directly related to the excessive force applied by Defendant Keen and others during his altercation with Inmate Hawthorne.   Undoubtedly, the force was excessive because at no time did Plaintiff resist Defendants' command to disengage from restraining Inmate Hawthorne. (Plaintiff's Declaration at 3).   Moreover, there is a material fact in dispute as to whether Plaintiff was engaged in the exchange of blows with Inmate Hawthorne, or simply trying to avoid the altercation and, instead, defending himself against blows thrown by Inmate Hawthorne.

Plaintiff contends that Defendant Keen's application of the force to this leg in light of his efforts to cooperate with the response team was unreasonable and, more importantly, establishes the force used by Keen was maliciously and sadistically used to cause harm to his leg. (Plaintiff's Declaration at  8).

Interestingly enough, the Investigative Report contains statements that corroborate Plaintiff's version of the events as reported by Inmate Marcus Easton that reads in part as follows: "one of the officers grabbed Inmate Simpkins (who was face down on the floor) by one of his ankles and pulled him from the pile and tried to handcuff him. Inmate Easton said that the officer who grabbed Inmate Simpkins' ankle twisted it and said put your hands behind your back or I'll break your leg." (Emphasis added).   See Report at 8.   Another inmate by the name of Michael Boyd further corroborated Plaintiff's version of the vents. According to Inmate Boyd, "a white officer had Inmate Simpkins' right leg (twisting his ankle), pushing it towards his buttocks." (Emphasis added).   Id. at 7. These assertions, albeit conveniently absent from Defendant's motion, were elicited during an investigation by Montgomery County should be sufficient to establish that Defendants' conduct were objectively harmful enough to offend

contemporary standards of decency.

Defendants' motion also fails to mention Defendant Keen is no longer employed with the Montgomery County because of another incident in which he used excessive force to cause harm to an inmate. Plaintiff's Declaration at 9. Accordingly, Plaintiff asks this Court to deny Defendants' motion for summary judgment as it relates to the protections afforded to him in accordance with the Eight Amendment of the U.S. Constitution against Cruel and Unusual Punishment.

**B.     Defendants Demonstrated a Deliberate Indifference to Plaintiff's Medical Needs When They Disregarded that His Leg Was Fractured**

In order for Plaintiff to prevail in his claim for Eight Amendment violation for Defendants' failure to provide him timely medical assistance,  he must first establish that Defendants the officials he is suing knew of and disregarded an excessive risk to his health. (See *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). Plaintiff contends that the facts here prove the elements essential for an Eighth Amendment violation. For instance, Plaintiff was seen by medical staff October 2nd, immediately after the altercation between himself and Hawthorne. Notwithstanding Plaintiff was observed by Private First Class Richard Arnold limping and complaining of leg pain, the nurse refused to permit him to take x-rays before the following Monday.  See Report at 7.  As a result, Plaintiff's treating physician concluded a correlation between his sustained injury of his lateral tibial plateau which could have been prevented if Defendant would have acted responsibly the date of the injury by providing proper medical attention.

Accordingly, Plaintiff argues that there is sufficient evidence to deny Defendants' motion for summary judgment in its entirety and allow this matter to proceed to trial.

Respectfully submitted on behalf of Plaintiff,


_____/s/_____

October 16, 2009          Nathaniel D. Johnson, Esq. (MD# 14729)
                          LAW FIRM OF NATHANIEL D. JOHNSON, LLC
                          201 Centennial Street, Suite A-2
                          P.O. Box 1857
                          LaPlata, Maryland  20646
                          (301) 645-9103


## **Certificate of Service**


I, Nathaniel D. Johnson, certify that on this date, October 16, 2009, Plaintiff's Opposition to

Defendant's Motion for Summary Judgment was forwarded, ECF, to Defendant's counsel.

/s/

Nathaniel D. Johnson